UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY ESTES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-852-RLW |
| | ) |
| KILOLO KIJAKAZI, | ) |
| ACTING COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant.[1] | ) |
| | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Kimberly Estes ("Estes") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

**I.    Background**

On September 27, 2017, Estes applied for disability benefits under Title II. (Tr. 125-26). Estes was born in 1973 and alleged disability beginning August 18, 2016 due to a "3% chance of hip breaking," fibromyalgia, chronic back pain, degenerative disk disease, residual ankle pain from a previous open reduction and internal fixation surgery, hypertension, depression, and anxiety. (Tr. 10, 152). On July 15, 2019, the ALJ issued a decision, finding Estes was not disabled. (TR 7-29). The ALJ determined that Estes retained the residual functional capacity ("RFC") to perform

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

light work as defined in 20 C.F.R. § 404.1567(b) with additional limitations, including occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes, and scaffolds. She could tolerate occasional exposure to hazards such as high exposed places and moving mechanical parts. Finally, she could frequently, but not constantly, handle with the right upper extremity. (Tr. 17). The ALJ found that Estes's impairments would not preclude her from performing her former work as a waitress and restaurant manager. (Tr. 24-25) or other work existing in significant numbers in the national economy, including the light, unskilled jobs of mail clerk, routing clerk, and electrical assembler. (Tr. 25-26). Thus, the ALJ found that Estes was not disabled. (Tr. 26).

The Appeals Council of the Social Security Administration denied Estes's request for review of the ALJ's decision on May 1, 2020. (Tr. 1-6). The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Estes filed this appeal on June 26, 2020. (ECF No. 1). On February 25, 2021, Estes filed a Brief in Support of her Complaint. (ECF No. 23). The Commissioner filed a Brief in Support of the Answer on May 26, 2021. (ECF No. 29). Estes filed her Reply Brief on June 9, 2021. (ECF No. 36).

As to Estes's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.

**II.     Decision of the ALJ**

At step two of the analysis, the ALJ found that Estes had the following severe medically determinable impairments: (1) degenerative disc disease and (2) residuals of open reduction and internal fixation of the right ankle. (Tr. 13). At step two, the ALJ also found that Estes had the following non-severe medically determinable impairments: (1) hypertension, (2) headaches, (3)

osteopenia of the lumbar spine; (4) polyneuropathy; (5) degenerative joint disease of the left hip; (6) GERD; (7) pleurisy; (8) chronic sinusitis; (9) major depression disorder; and (10) anxiety disorder. (Tr. 13-15). At step two, however, the ALJ found that Estes's fibromyalgia was not a medically determinable impairment. (Tr. 14-15). At step three, the ALJ found that Estes did not meet or equal one of the listed impairments. (Tr. 16). The ALJ found that Estes had the residual functional capacity (RFC) "to perform 'light' work except she can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs . . . and can frequently handle with the right upper extremity." (Tr. 17). At step four, the ALJ found that Estes can perform her past relevant work as a waitress or as a restaurant manager. (Tr. 24). In the alternative, at step five, the ALJ posed a question to the vocational expert whether a hypothetical individual with Estes's impairments could perform work that exists in significant numbers in the national economy. The vocational expert testified that such a hypothetical individual could perform work as a mail clerk, routing clerk, and electrical assembler. (Tr. 46). Relying on the vocational expert's testimony, the ALJ found that "considering [Estes's] age, education, work experience, and [RFC], [Estes] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled is therefore appropriate." (Tr. 26).

**III.     Legal Standard**

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's

3

physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing*

4

evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

This Court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v.*

*Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

### IV.   Discussion[2]

"Fibromyalgia is a disorder that causes muscle pain and fatigue. People with fibromyalgia have 'tender points' on the body. Tender points are specific places on the neck, shoulders, back, hips, arms, and legs. These points hurt when pressure is put on them." *Wheeler v. Berryhill*, No. CV 16-5062-JLV, 2017 WL 4271428, at *2, n.3 (D.S.D. Sept. 26, 2017) (citing Fibromyalgia, MedlinePlus, U.S. National Library of Medicine, available at https://medlineplus.gov/fibromyalgia.html); *Lewis v. Saul*, No. 6:20-CV-03195-NKL, 2021 WL 943108, at *2 (W.D. Mo. Mar. 12, 2021) (citing SSR12-2p) ("Fibromyalgia is a 'complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons or nearby soft tissues that has persisted for at least 3 months.'"). "Fibromyalgia is an elusive diagnosis, its cause or causes are unknown, there's no cure, and, of greatest importance to disability law, its symptoms

---

[2] Because Estes limits her arguments to the ALJ's treatment of her fibromyalgia, the Court will not address any of her other alleged impairments.

are entirely subjective." *Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir. 2009) (internal citations omitted).

In this case, the ALJ found that, although her medical records "contained several references to the diagnosis of fibromyalgia", "the medical record does not confirm that [Estes] has the requisite number of tender point findings and there is no evidence that medical doctors have excluded other impairments as required in SSR 12-2p. Thus, this diagnosis does not comport with the requirements set forth in either SSR 12-2p or 96-4p that requires that an 'impairment' must result from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Consequently, the [ALJ found] that [fibromyalgia] does not met the requirements set forth by the Social Security Administration needed for the determination that fibromyalgia is a medically determinable impairment." (Tr. 14-15).

Estes argues that the ALJ's finding that Estes did not have a medically determinable impairment of fibromyalgia is not supported by substantial evidence. Further, Estes claims the ALJ formulated an RFC that did not consider the symptoms and limitations caused by Estes's fibromyalgia. (ECF No. 23 at 2-15). Therefore, Estes moves the Court to vacate the ALJ's decision and remand this case to the Commissioner under section four of 42 U.S.C. §405(g) with instructions to properly evaluate Estes's fibromyalgia under Social Security Ruling 12-2p.

In particular, Estes argues that the Court did not properly consider the 2010 ACR criteria under Social Security Ruling 12-2p, which provides:

> The 2010 ACR Preliminary Diagnostic Criteria. Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following criteria:
>
> 1. A history of widespread pain (see section II.A.1.);

7

> 2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

*See* https://www.ssa.gov/OP_Home/rulings/di/01/SSR2012-02-di-01.html (last visited 2/11/22). Estes argues that she met all of the criteria under SSR 12-2p for a finding that her fibromyalgia constituted a severe medical impairment. (ECF No. 23 at 5-7). Estes claims error for the ALJ's failure to consider the first and second criterion under SSR 12-2p. (ECF No. 23 at 10; ECF No. 36 at 2 (citing SSR 12-2p). Estes argues that the ALJ only evaluated Estes's fibromyalgia under one of the two tests. (ECF No. 36 at 2 (citing *Haynes v. Saul*, No. 1:19-CV-146-SPM, 2020 WL 5569984, at *4 (E.D. Mo. Sept. 17, 2020) ("a claimant must have a physician's diagnosis of fibromyalgia and evidence to satisfy one of two sets of criteria" set forth in SSR 12-2p at II.A or II.B)).

Estes implores that her medical history was replete with symptoms of "widespread body pain." (ECF No. 23 at 5, n.11). She reported "chronic stiffness and myalgias to her doctors." (ECF No. 23 at 5). Estes's doctors prescribed Tramadol, and then Gabapentin, at increasing doses, to treat her pain. (ECF No. 23 at 5-6). At Estes's ALJ hearing, Social Security disability application, and State agency Disability Report, Estes reported that she had extreme pain, fog brain, and muscle spasms that limited her ability to function. (ECF No. 23 at 6). Thus, Estes claims that the first prong of the 2010 ACR criteria under Social Security Ruling 12-2p is satisfied. Estes further argues that the second criterion is also met because she consistently had six or more fibromyalgia symptoms, signs, or co-occurring conditions, *e.g.*, manifestations of fatigue, cognitive or memory problems (fibro fog), swollen joints and tenderness, depression, and anxiety

8

disorder. (ECF No. 23 at 7, n.22-27). Finally, Estes contends the medical record demonstrates the third criterion with radiological testing, physical examinations, and blood count labs that indicate symptoms of fibromyalgia. (ECF No. 23 at 7, n.28-31). Given that she underwent "extensive radiological imaging, numerous physical examination by treating doctors, and several complete blood counts in order to rule out other medical conditions that share some of the same symptoms, signs, or co-occurring conditions of fibromyalgia[,]" Estes argues that the ALJ misunderstood the third criterion of SSR 12-2p when the ALJ found no evidence that her medical doctors excluded other impairments.

Estes also claims that the ALJ's erroneous evaluation of her fibromyalgia calls into question the resulting RFC assessment. (ECF No. 23 at 11). Because the ALJ determined that Estes did not have a medically determinable impairment of fibromyalgia, Estes argues that the ALJ failed to consider the widespread and potentially debilitating effects of fibromyalgia, along or in combination with her other impairments when assessing Estes's limitations. (ECF No. 23 at 12).

Estes contends that the ALJ erroneously found that Estes's subjective complaints were not entirely credible based upon the ALJ's review of the medical records. Estes argues that the ALJ improperly referenced Estes's normal exams results "rather than the various symptoms which can be associated with fibromyalgia[.]" (ECF No. 23 at 12). Estes argues that the ALJ should have examined the record for indications of pain and other symptoms associated with fibromyalgia, "which may result in exertional and nonexceptional limitations." (ECF No. 23 at 12). Estes argues that, under SSR 12-2p, the ALJ should have determined whether limitations from the fibromyalgia symptoms should have been incorporated into Estes's RFC. (ECF No. 23 at 12-13). Thus, by not including substantially all of the fibromyalgia subjective symptoms and limitations in the formulated RFC, Estes claims the ALJ "failed to build an accurate or logical bridge from the

9

evidence of the record," in violation of SSR 96-8p, 12-2p, and 16-3p, and Eighth Circuit case law. (ECF No. 23 at 15). As a result, Estes urges the Court to find that the formulated RFC at step four, and the RFC/hypothetical question posed to the vocational expert at step five, were not based on substantial evidence. (ECF No. 23 at 15).

The Court finds that the ALJ properly considered whether Estes's fibromyalgia was a severe medical impairment. The ALJ noted that "the medical record does not confirm that the claimant has the requisite number of tender point findings and there is no evidence that medical doctors have excluded other impairments as required in SSR 12-2p." (Tr. 14-15). The ALJ determined that fibromyalgia was not medically determinable and, not a severe impairment. *Id*. ("this diagnosis does not comport with the requirements set forth in either SSR 12-2p or 96-4p that requires that an 'impairment' must result from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."). "The ALJ's decision recognizes [Estes's] fibromyalgia diagnosis, but every fibromyalgia diagnosis does not entitle a claimant to benefits." *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021).

The Court finds that the evidence does not support Estes's alleged limitations due any impairment or combination of impairments. *See Grindley*, 9 F.4th at, 631 ("It was reasonable for the ALJ to rely on objective medical evidence in adjudicating Grindley's claim. But in this case, the ALJ's decision shows that it also considered Grindley's allegations of pain in its analysis."). As the ALJ discussed, June 2015 x-rays of the lumbar spine showed "minimal" endplate degenerative changes with "minimal" superior endplate compression deformity, with otherwise preserved vertebral body height and intervertebral disc spaces. (Tr. 18, 337-38, 343). The impression was "mild" degenerative disease. (Tr. 18, 338, 343). On January 12, 2016, Estes's

10

primary care provider, Kam Lie, M.D., noted back pain upon examination of Estes, but her straight leg raise testing was negative bilaterally. Dr. Lie did not document any other significant abnormalities, with respect to range of motion, strength, or gait. (Tr. 18, 492-94). Lumbar spine imaging showed "low-grade" degenerative changes in the lower thoracic and lumber spine within nothing acute at that time. (Tr. 18, 365). On September 1, 2017, Estes reported that her back pain was better with medication, and she displayed normal motor and sensory function. (Tr. 438, 440). On January 11, 2018, consultative examining physician, Dr. Burchett, observed that Estes had a normal gait, non-tender upper extremities, normal range of motion in the hands, negative straight leg raising, the ability to work on toes and heels, and the ability to squat without difficulty. (Tr. 507-09). On July 14,2018, Estes displayed a normal gait and improved spine tenderness. (Tr. 560). On February 4, 2019, Estes displayed a gait without ataxis or unsteadiness. (Tr. 591). The Court understands that it must "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p; *Lewis*, 2021 WL 943108, at *3. However, the Court finds that, during the course of Estes's treatment, she appears to have had more good than bad days, supporting a finding of a non-severe medical impairment. "The ALJ weighed all of the evidence before [her] and made a permissible decision to give more weight to the "normal" exam results. This decision is supported by the record as a whole." *Grindley*, 9 F.4th at 629. The Court holds that the ALJ properly considered the entire record, including Estes's fibromyalgia, such that any failure to consider it to be a severe impairment was harmless. *Garcia v. Comm'r of Soc. Sec.*, No. 1:19 CV 897, 2020 WL 3620041, at *8 (N.D. Ohio Apr. 21, 2020). ("[T]he alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision.").

The ALJ further found that Estes's conservative treatment indicated that her alleged disabilities were not as severe as she stated. The ALJ noted that Estes "received overall conservative treatment for her back condition and polyneuropathy with prescribed medication, such as tramadol, tizanidine, and gabapentin." (Tr. 21). The ALJ also noted that Estes's "treatment providers have not suggested more extreme treatment options, such as surgery, to treat her degenerative disc disease." (Tr. 21). Finally, the ALJ stated that Estes "has received conservative treatment regarding this condition with medication" after undergoing right ankle surgery. (Tr. 21, 423-505, 555-94). Thus, the Court holds that the ALJ properly considered Estes's conservative treatment when evaluating her complaints. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (*citing Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)) ("A pattern of conservative treatment may erode the reliability of debilitating complaints."); *Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) (conservative treatments were inconsistent with allegations of disability).

The ALJ also assessed Estes's daily activities when evaluating her complaints.[3] The Eighth Circuit has approved of courts evaluating the activities of daily living in the context of fibromyalgia to determine the severity of a claimant's limitations:

> But the ALJ never stated that he relied solely on objective evidence in adjudicating Grindley's claim; instead, the ALJ explained "[o]verall, objective findings in this case fail to provide strong support for the claimant's allegations[.]" Throughout his opinion, the ALJ referenced Grindley's testimony on issues related to (1) her daily routine and ability to function in daily grooming activities, (2) her ability to work well with others and concentrate, and (3) allegations of pain and lupus flare ups. The ALJ's "objective findings" statement was made in the context of rejecting Grindley's subjective allegations of disabling symptoms. Thus, we reject Grindley's objective-evidence challenge.

---

[3] "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints."; *Holmstrom v. Massanari,* 270 F.3d 715, 721 (8th Cir.2001) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). This includes evidence pertaining to "the claimant's daily activities"; "the duration, frequency and intensity of the pain"; "precipitating and aggravating factors"; "dosage, effectiveness and side effects of medication"; and "functional restrictions." *Polaski,* 739 F.2d at 1322.

*Grindley*, 9 F.4th at 628.  Likewise, the ALJ in this case found Estes's daily activities were inconsistent with her complaints of disabling symptoms and limitations.  (Tr. 22).  At the hearing, Estes reported being able to prepare simple meals and go grocery shopping.  To the State agency, Estes reported feeding, cleaning, and clothing her grandson.  (Tr. 22, 172-82).  Estes likewise responded to the State agency that she did dishes, laundry, and basic cleaning, although she takes her time.  (Tr. 22, 172-82).  Thus, while "the ALJ may not discredit a claimant solely because her subjective complaints are not fully supported by objective medical evidence," *Brosnahan v. Barnhart*, 336 F.3d 671, 677-78 (8th Cir. 2003), the ALJ permissibly relied on Estes's ability to engage in these activities of daily living as indications that her subjective complaints may not be reliable.  *Grindley*, 9 F.4th at 631.

Finally, after determining that fibromyalgia was not a severe impairment, the ALJ continued with the sequential process, evaluating the entire record to determine the limitations supported by the evidence and the amount of work Estes could do in light of the entire record.  (Tr. 17-24).  *See* 20 C.F.R. § 404.1520.  The ALJ was required to "consider limitations and restrictions imposed by all of [the] individual's impairments, even those that are not severe." *Fisk v. Astrue,* 253 Fed.Appx. 580, 583 (6th Cir. 2007) (internal quotation marks omitted); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013); *see also* 20 C.F.R. § 404.1523.  As noted, the ALJ included restrictions to Estes's RFC based upon her identified impairments, including her non-severe fibromyalgia.  (Tr. 17-24).  The ALJ, however, noted that Estes's "treatment providers have never indicated that her severe physical impairments could reasonable be expected to result in any work-related limitations.  The absence of treatment or examining source opinion supportive of total disability, or of limitations greater than those contained in the residual functional capacity, suggests that these  sources did not believe such opinion to be warranted." (Tr. 22).  Thus, the

13

Court holds that the ALJ properly considered Estes's non-severe impairment from fibromyalgia when evaluating her RFC.[4] *See Thompson v. Colvin*, No. 4:13 CV 2487 DDN, 2015 WL 1245380, at *8 (E.D. Mo. Mar. 18, 2015) ("The ALJ properly considered plaintiff's non-severe impairment of headaches when determining her RFC by imposing non-exertional limitations concerning her exposure to noise, vibrations, and hazards."). The Court affirms the decision of the ALJ, including the RFC, because they are based upon substantial evidence.

### V.      Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

Dated this 15th day of March, 2022.

_____
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE

---

[4] The Court finds that the cases cited by Estes do not require the Court to discount normal examinations and evaluations. Rather, in those cases, the ALJ largely failed to even consider the claimant's fibromyalgia. See *Haynes v. Saul*, No. 1:19-CV-146-SPM, 2020 WL 5569984, at *5 (E.D. Mo. Sept. 17, 2020) ("This is not a situation where the ALJ failed to list an impairment as severe but nevertheless considered the impairment and its effects later in his analysis. Here, the ALJ did not discuss Plaintiff's fibromyalgia or its effects at any step of the decision.").